People v Persaud

2026 NY Slip Op 02853

May 6, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, respondent,

v

Javesh Persaud, appellant.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on May 6, 2026

2025-00545, (Ind. No. 72415/23)

Francesca E. Connolly, J.P.

Valerie Brathwaite Nelson

Barry E. Warhit

Lourdes M. Ventura

Susan Quirk, JJ.

Karen G. Leslie, Riverhead, NY, for appellant.

Raymond A. Tierney, District Attorney, Riverhead, NY (Pilar O'Rourke of counsel), for respondent.

[*1]

DECISION & ORDER

Appeal by the defendant, as limited by his motion, from a sentence of the County Court, Suffolk County (Karen M. Wilutis, J.), imposed December 11, 2024, sentencing him to a determinate term of imprisonment of 12 years plus 20 years of postrelease supervision upon his conviction of sex trafficking under count 3 of the indictment, indeterminate terms of imprisonment of 4 to 12 years upon his remaining 3 convictions of sex trafficking, an indeterminate term of imprisonment of 4 to 12 years upon his conviction of promoting prostitution in the second degree, an indeterminate term of imprisonment of 2⅓ to 7 years upon his conviction of promoting prostitution in the third degree, a determinate term of imprisonment of 12 years plus 20 years of postrelease supervision upon his conviction of criminal sexual act in the first degree, and a determinate term of imprisonment of 4 years plus 10 years of postrelease supervision upon his conviction of criminal sexual act in the third degree, with all sentences to run concurrently, upon his plea of guilty, on the ground that the sentence was excessive.

ORDERED that the sentence is modified, as a matter of discretion in the interest of justice, by reducing the sentences imposed on the conviction of sex trafficking under count 3 of the indictment from a determinate term of imprisonment of 12 years plus 20 years of postrelease supervision to a determinate term of imprisonment of 12 years plus 10 years of postrelease supervision, and on the conviction of criminal sexual act in the first degree from a determinate term of imprisonment of 12 years plus 20 years of postrelease supervision to a determinate term of imprisonment of 12 years plus 10 years of postrelease supervision; as so modified, the sentence is affirmed.

Contrary to the People's contention, the defendant's purported waiver of the right to appeal was invalid. The record reflects that the County Court made its own offer of sentence to the defendant and required the defendant to waive his right to appeal, without setting forth any reason for demanding an appeal waiver (see People v Small, 203 AD3d 756; People v Esposito, 187 AD3d 781; People v Sutton, 184 AD3d 236, 244-245). Thus, the purported waiver of the right to appeal does not preclude appellate review of the defendant's excessive sentence claim (see People v Sutton, 184 AD3d at 244-245).

"An intermediate appellate court has broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range" (People v Delgado, 80 NY2d 780, 783; see CPL 470.15[6][b]; People v Thompson, 60 NY2d 513, 519). Our sentencing review power "may be exercised, if the interest of justice warrants, without deference to the sentencing court" (People v Delgado, 80 NY2d at 783). "In considering whether a sentence is unduly harsh or severe under the circumstances, we exercise our discretion giving consideration to, 'among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation, and deterrence'" (People v Kordish, 140 AD3d 981, 982-983, quoting People v Farrar, 52 NY2d 302, 305). "A defendant need not demonstrate extraordinary circumstances or abuse of discretion by the sentencing court in order to obtain a sentence reduction" (People v Brisman, 43 NY3d 322, 324).

Here, we agree with our dissenting colleague that the imposition of an aggregate determinate term of imprisonment of 12 years was not excessive. Our disagreement concerns the imposition of the 20-year period of postrelease supervision, which is the statutory maximum (see Penal Law §§ 70.02[1][a], 70.45[2-a][f]).

In our view, taking into account the facts and circumstances of this case and the purpose of a penal sanction, the 20-year period of postrelease supervision imposed was excessive to the extent indicated herein (see People v Suitte, 90 AD2d 80). We do not condone any of the defendant's criminal conduct. Nevertheless, the defendant's criminal conduct at 33 years of age was aberrational, as he had no prior criminal history (see People v Kerringer, 195 AD3d 861, 862). Although our dissenting colleague contends that the defendant did not express any remorse for his actions during his interview with the Department of Probation, the defendant did accept responsibility for his criminal conduct, stating, "I never intended to hurt anyone . . . [i]f this [presentence investigation report] is being filed, it obviously affected somebody and I take responsibility for that." Further, contrary to the assertion of our dissenting colleague, "the Appellate Division may exercise [the] power to modify a sentence even where the defendant pleaded guilty and received the sentence for which he or she bargained" (People v Brown, 122 AD3d 133, 146; see People v Thompson, 60 NY2d at 520; People v Conley, 150 AD3d 1023, 1024). "The statutes governing this type of appeal draw no distinction between sentences based on verdicts of guilty and those resulting from guilty pleas. In either circumstance the defendant has a statutory right to appeal to the Appellate Division's discretionary power to reduce his [or her] sentence if the interests of justice warrant it" (People v Thompson, 60 NY2d at 520). Accordingly, under the circumstances of this case, an aggregate determinate term of imprisonment of 12 years plus 10 years of postrelease supervision strikes an appropriate balance of adequately protecting the public and impressing upon the defendant the seriousness of his actions, while providing the defendant with an opportunity to rehabilitate (see People v Farrar, 52 NY2d at 305-306).

The defendant's remaining contention is not properly before this Court.

CONNOLLY, J.P., WARHIT, VENTURA and QUIRK, JJ., concur.

BRATHWAITE NELSON, J., dissents and votes to affirm the sentence, with the following memorandum:

I dissent from the finding by the panel majority that the defendant, who engaged in sexually predatory crimes, is entitled to a reduction of the agreed upon period of postrelease supervision where he committed eight separate crimes, including sex trafficking, criminal sexual act in the first degree, and serious multiple sexual assaults and acts of violence, against a vulnerable, poverty stricken, and homeless young woman. The defendant received the benefit of a favorable negotiated plea bargain in which he avoided much longer periods of incarceration on his more serious crimes by agreeing to an extended period of postrelease supervision. In accordance with the terms of the plea bargain, the defendant has already profited from a reduced prison term. The decision to reduce the agreed upon period of postrelease supervision effectively relieves the defendant from a significant portion of his side of a plea bargain—one-half of the negotiated period [*2]of postrelease supervision. Contrary to the assertion of the panel majority, the reduction of the agreed upon period of postrelease supervision neither impresses upon the defendant the seriousness of his actions, nor adequately protects the public, nor furthers his rehabilitation. Rather, the reduction of the agreed upon period of postrelease supervision serves to undermine the seriousness of the criminal sexual offenses committed in this case. Nothing about the defendant's circumstances warrants relieving him from completing the agreed upon terms of the negotiated plea. Given the serious nature of the defendant's crimes and his complete lack of remorse for those crimes or their impact upon his victim, I cannot agree with the panel majority that the interest of justice compels this Court to step in and upset the negotiated plea, which it is undisputed that the defendant entered knowingly, intelligently, and voluntarily. Accordingly, and for the additional reasons set forth below, I dissent.

In August 2023, the defendant contacted the victim using the website Omegle, which provided a chat service to connect to strangers. The victim had just turned 18 years old and her father had forced her out of her home in New Jersey to make room for his new family. The victim made her way to Manhattan, where she began living homeless on the streets of New York City for several weeks and sleeping on the floor in subway stations, when the defendant contacted her. The victim was using an old cell phone that had WiFi, but no carrier telephone service. The defendant, who was almost twice the victim's age, told the victim, whom he described as Hispanic and homeless, that he helped people experiencing homelessness and offered her clean clothes, a shower, food, and a place to sleep. The defendant drove from Suffolk County into Manhattan that same day, traversing four to five counties, picked up the victim, and drove her back to Suffolk County. The victim had never been to Long Island, and had no friends, family, or any other contacts there. Approximately 40 minutes into the drive to Long Island, the defendant's demeanor changed and he became very aggressive. He told the victim, "I'm your Big Daddy now, you do whatever I say." The defendant informed the victim that he was "going to sell [her] into sex work." The victim, who was sitting in the backseat, tried to exit the car, but the defendant had locked the door. The defendant drove the victim to a location where he kept a broken-down car and informed her that this was where she would be staying.

Over the course of the following weeks, the defendant forced the victim to engage in sexual intercourse and other multiple sexual acts with numerous strangers in exchange for money that he kept for himself. The victim estimated that the defendant forced her into sexual intercourse and other sexual acts with 20 to 25 strangers. When the victim refused to engage in a sexual act or attempted to disagree with the defendant, he would use physical violence and threaten to harm her. On different occasions, the defendant slapped and hit the victim, threatened to stab her with a knife, and strangled her in order to force her into compliance. The defendant threatened the victim that he would hurt her if she tried to go to the police. In addition to forcing the victim to engage in multiple sexual acts with numerous strangers for the defendant's pecuniary gain, the defendant also forced the victim to engage in sexual acts with him, including by forcible compulsion. On at least one occasion, the defendant choked the victim, placing his hand on her neck and applying pressure, and placed his penis in her mouth. Eventually, in September 2023, the victim was able to place a phone call to Polaris, the National Human Trafficking Hotline (hereinafter Polaris) to ask for help. Polaris contacted the Suffolk County Police Department, which dispatched officers who rescued the victim. At the plea proceeding, the defendant admitted not only to his conduct, but also that he falsely told the victim that he would provide her with food and shelter in order to induce her to come with him and force her into prostitution. He further admitted that he used violence and threats against the victim in order to instill fear in her that if she did not comply with his demands to engage in sexual acts for money that the defendant or another person would cause physical injury to her, including pointing a knife at her and threatening to stab her.

The defendant entered into a negotiated plea bargain and pleaded guilty to four counts of sex trafficking, criminal sexual act in the first degree, promoting prostitution in the second degree, promoting prostitution in the third degree, and criminal sexual act in the third degree, in exchange for promised concurrent sentences, the longest of which was a determinate term of imprisonment of 12 years plus 20 years of postrelease supervision on his conviction of criminal sexual act in the first degree, a class B violent felony sex offense (see former Penal Law §§ 70.02[1][a], 70.80[1][a], [b], [*3]130.50[1]). The presentence investigation report (hereinafter PSI report) indicated that the defendant was interviewed prior to sentencing, and reported the following:

"[The defendant] admitted guilt in regard to the instant offense. He then stated, 'I'm not the person who did all that stuff.' When asked why he pled guilty, the defendant stated, 'I was advised by my lawyer that it was the best choice/decision to make. That's not really the type of person I am.' With regard to the unnamed victims, he stated that he had met the two females approximately one month prior to his arrest and that they were in a three-way relationship . . . . He stated that the females were not involved in prostitution and that he was not sure why he was charged with promoting prostitution or sex trafficking . . . . 'I never intended to hurt anyone.' The defendant was asked how he hurt anyone if he is denying his actual charges. He replied, 'If this report is being filed, it obviously affected somebody and I take responsibility for that.'"

The evaluative analysis of the probation officer who interviewed the defendant reported that although the defendant admitted his guilt, he "then stated that he only pled guilty because his attorney advised him to do so. He denied that the victim in this case was involved with prostitution. He denied that he was involved in any way with forcing her to prostitute. The defendant therefore did not express any remorse for his actions or for the victim."

In a statement at sentencing, the victim expressed the effects of the defendant's crimes on her, stating, "You are the reason why I don't feel comfortable in a room filled of men. You're the reason why I don't feel comfortable in my skin as a person anymore. I was barely a legal adult and you took the desperate and vulnerable girl I was and used me for your own personal gain . . . . I was barely 18 and you were twice my age. I didn't eat and sleep properly for the next year of my life because of you. I still have scars on my body because of you. You choked, beat me up, and made me feel like I was nothing. I will never look at men the same way anymore."

The defendant received the benefit of the negotiated plea, avoiding much longer periods of incarceration on his more serious crimes by willingly agreeing to an extended period of postrelease supervision. The Legislature saw fit to establish longer periods of postrelease supervision for the commission of felony sex offenses (see Penal Law § 70.45 [2-a]). The defendant benefitted and avoided a longer period of incarceration by agreeing to a longer period of postrelease supervision. He has pointed to no compelling circumstance that calls for unraveling the agreed upon bargain and reducing the agreed upon sentence. Contrary to the characterization of the panel majority, I am well aware that this Court's interest of justice jurisdiction to reduce a sentence that is "unduly harsh or severe" (CPL 470.15[6][b]) includes the ability to review a sentence imposed as part of a plea bargain (see People v Thompson, 60 NY2d 513, 520). Whether the sentence imposed was part of a negotiated plea, however, is a circumstance that the appellate court should consider, particularly where, as here, the defendant received a benefit in exchange for the bargained-for sentence.

I cannot agree with the panel majority that the record establishes that the defendant expressed any remorse for his actions. Clearly, the PSI report indicates precisely the opposite. Following his arrest, the defendant denied any criminality, and, notwithstanding his plea of guilty, continued to do so through sentencing. Furthermore, I cannot agree with the panel majority's speculation that the defendant's lack of prior criminal history establishes that the subject crimes were an aberration to his character. The record before us establishes only his guilt and his denial of that guilt. The instant crimes did not occur in a momentary lapse of judgment. The defendant engaged in a calculated plan in which he used a website chat service to intentionally target a vulnerable young homeless woman. Then, after successfully targeting the young vulnerable victim, the defendant continued with his calculated plan and deceived her by claiming to provide homeless services in order to get her into his car and to trap her and force her into sex trafficking. Over the course of the weeks that he held her, he had the wherewithal to engage 20 to 25 strangers to pay him money to force the victim into sexual acts with the strangers. And, over this extended period of time, he subjected her to continued violence, including pointing a knife at her and threatening to stab her, as well as extreme sexual violence, which left scars on her body. This shows that, contrary to the panel majority's characterization, the defendant's conduct was not an aberration warranting a reduced [*4]period of postrelease supervision. I cannot agree with my colleagues in the panel majority that any circumstances are present to warrant any reduction of the agreed upon period of postrelease supervision. I dissent and would affirm the sentence, which was bargained for, expressly agreed upon by the defendant, and more than warranted for the crimes the defendant committed against a young vulnerable woman.

ENTER:

Darrell M. Joseph

Clerk of the Court